**SIGNED THIS: October 10, 2013**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 13-71071 |
| KIRA I. M. YOUNGBLOOD, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

# O P I N I O N

The Chapter 13 Trustee filed a Motion to Convert this case from Chapter 13 to Chapter 7, claiming that the Debtor made numerous pre-petition transfers, committed fraud, and acted in bad faith. Creditors, Bruce A. Pedigo and Ann, Inc., d/b/a Joe's Towing and Recovery, filed a similar Motion to Convert and a Motion for Sanctions. In response to the conversion requests, the Debtor filed a Motion to Dismiss asserting that, despite the allegations of bad faith, she has an absolute right to dismiss and, in any event, dismissal would be in the best interest of her creditors. After an evidentiary hearing and consideration of the arguments and authority submitted by counsel, this

Court must conclude that the Debtor has acted in bad faith and, accordingly, has forfeited her absolute right to dismiss. Nevertheless, the case will be dismissed because dismissal is in the best interest of the Debtor's creditors. The dismissal will be with a three-year bar to refiling.

**I. Factual and Procedural Background**

Kira I. M. Youngblood ("Debtor") was seriously injured in a vehicle accident in 2006. In 2010, she settled her claims related to the accident for $3 million. After paying attorney's fees and medical liens, the Debtor netted approximately $1.2 million. The Debtor used the funds to purchase a home and a vehicle, to pay her college tuition, and to make investments. Her principal investment involved starting a business with her husband, Sean Youngblood. The Debtor formed a limited liability company, Kira LLC, and, at least on paper, retained full ownership and control of the company. Kira LLC operated a towing business under the registered name of Bloomington Normal Towing and Recovery ("BN Towing").

Sean Youngblood had experience in the towing business and ran the day-to-day operations of BN Towing. Unfortunately, Sean Youngblood also was engaged in a long-running feud with his prior employer, Bruce Pedigo, and Mr. Pedigo's business, Ann, Inc., d/b/a Joe's Towing and Recovery ("Joe's Towing"). In 2011, the feud escalated into a litigation war when the Debtor and Kira LLC filed a state court action against Mr. Pedigo and Joe's Towing alleging defamation and tortious interference with contractual relationships. The Debtor's complaint was dismissed with leave to replead several times and, finally, was voluntarily dismissed by the Debtor in June 2012. But, because Mr. Pedigo had incurred fees and costs defending the case and had established that certain allegations in the various complaints were blatantly false, the Debtor and Kira LLC were

sanctioned by the state court. A judgment for sanctions in the amount of $13,237 was entered in November 2012 against the Debtor and Kira LLC and in favor of Mr. Pedigo and Joe's Towing.

In March 2013, Mr. Pedigo and Joe's Towing filed supplementary proceedings in state court and caused the issuance of a citation to discover assets against the Debtor and Kira LLC. The Debtor was ordered to appear on April 30, 2013, to answer questions about her income and assets and the income and assets of Kira LLC which might be available to pay the sanctions judgment. The Debtor appeared before the state court as ordered but brought no information or documents with her. The matter was continued for further hearing on May 28, 2013.

In early April 2013, after being served with the citation to discover assets, the Debtor met with a lawyer for a bankruptcy consultation. She had several additional meetings with the same lawyer later in April and in May, and filed her voluntary Chapter 13 petition on May 28, 2013, just an hour before her rescheduled hearing in state court on the citation to discover assets. The Debtor later filed a Statement of Financial Affairs, schedules, and a Chapter 13 Plan.

The Debtor's Schedule I disclosed that she was working as a pharmacy technician with after-tax income of $828 per month and that her husband was unemployed with no income.[1] The Debtor's Schedule J listed $2240 in regular monthly household expenses, resulting in a monthly deficit of $1412. Nevertheless, the Debtor's Chapter 13 Plan proposed $522 per month payments for a 60-month term to pay all creditors in full.

Not surprisingly, the Debtor failed to commence her plan payments in a timely manner, and

---

[1] The Debtor also filed a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("B22C"). Because she had only been employed for two months prior to filing, the Debtor's B22C showed limited income and has largely been ignored by the parties. Because the key issue here is the feasibility of any plan, the parties have focused on the Debtor's Schedules I and J rather than the B22C.

the Chapter 13 Trustee ("Trustee") filed a Motion to Dismiss. Mr. Pedigo and Joe's Towing promptly objected to confirmation on the grounds that the Chapter 13 Plan lacked feasibility and was not filed in good faith. They also pointed out numerous defects and inaccuracies in the other documents filed by the Debtor.

The Debtor responded, in part, by finding a new lawyer. Her new lawyer filed a number of amended documents, including Amended Schedules I and J and a First Amended Chapter 13 Plan. The Debtor's Amended Schedule I disclosed after-tax income from her pharmacy job of $1450 per month and claimed that the Debtor's husband was holding $10,000 in proceeds remaining from the Debtor's injury settlement which could be used to supplement plan payments if her earned income was not sufficient. The Amended Schedule J reduced the monthly household expenses to $1050, resulting in a $400 per month surplus. The First Amended Plan proposed $400 per month payments over a 60-month term to pay all creditors in full. The Debtor acknowledged that payment in full was required because she has significant equity in her residence and vehicle, and creditors would be paid in full if she had filed a Chapter 7 case.

The Trustee conducted the initial meeting of creditors on July 18, 2013, and, on that same day, withdrew his request for dismissal and filed his Motion to Convert. The Trustee alleged that the Debtor had dissolved Kira LLC and transferred the business assets without consideration just shortly before filing. The Trustee complained that the Debtor had failed to fully disclose her business interests and activities in her Statement of Financial Affairs or on her schedules. He argued that a Chapter 7 trustee should be appointed to conduct an investigation and recover assets. In withdrawing his Motion to Dismiss, the Trustee asserted that the Debtor had still not made any payments to him, but that conversion rather than dismissal was in the best interest of her creditors. The Debtor

responded to the Motion to Convert by admitting that her documents contained numerous inaccuracies, but she blamed her original attorneys for the problems and promised to make all amendments necessary to provide complete and accurate information. She also admitted that Kira LLC had been dissolved and that she had transferred the assets to former employees.

In a written reply to the Debtor, the Trustee further complained that the Debtor still had not disclosed all pre-petition transfers and mentioned in particular the Debtor's apparent transfer of $10,000 of her settlement proceeds to her husband mentioned on her Amended Schedule I. The Trustee also pointed out that the Debtor's Amended Schedule J reduced expenses by removing all medical expenses and by not including real estate taxes on the Debtor's $285,000 home. Thus, the Trustee questioned both the feasibility and good faith of the First Amended Plan.

Mr. Pedigo and Joe's Towing filed a separate Motion to Convert, alleging that the Debtor's case was filed in bad faith due to the timing of the filing and the attempt through the filing to delay paying the state-court-ordered sanctions. They further alleged that despite the Debtor's numerous pre-petition transfers, her Schedules A, B, and F disclosed that she had over $320,000 in assets and only $25,000 in debts. In response to the creditors' Motion to Convert, the Debtor filed her Motion to Dismiss, claiming that she had an absolute right to dismiss regardless of the pending allegations against her. Further, in what she claimed was an effort "to show good faith and to reassure the Court," the Debtor attached to her Motion to Dismiss a copy of a check drawn on the personal account of Sean Youngblood in the amount of $13,277 and made payable to "Bruce Pedigo 'Liar'."

An evidentiary hearing on all of the pending motions was held on September 5, 2013. Prior to the hearing, the Trustee and the Debtor filed a Stipulation of Facts. In the Stipulation, the Debtor admitted that the assets of Kira LLC which had an original cost of over $765,000 had been

transferred to third parties for no consideration. She agreed that the towing business had been dissolved because the Town of Normal revoked her business license. She also stipulated that while her husband ran the day-to-day operations of the towing business, she attended college and received good grades. The Debtor acknowledged that her husband completed most of the paperwork for her bankruptcy filing and she signed the documents despite not fully understanding what she was doing. She admitted that the representation on her Amended Schedule I that her husband was holding $10,000 from her settlement that could be used to make plan payments was not true. No such funds exist.

The Debtor was also called as a witness by the Trustee at the evidentiary hearing. She testified that Kira LLC's business license was revoked due to criminal charges filed against her husband. She admitted that she had used some of her remaining settlement funds along with proceeds from the sale of a vehicle to post a $200,025 bond to have her husband released from jail. Her interest in the funds posted as bond was not disclosed anywhere in her bankruptcy documents.

Under questioning by her own attorney, the Debtor claimed that due to the severe concussion she suffered in the 2006 accident, she has memory problems and cannot always remember things that she has done. She stated that she filed this case because she did not have the funds to pay the sanction judgment in full, and she understood that she could use this case to protect her assets while paying the judgment over time. The Debtor claimed that prior to filing, she and her husband had made efforts to borrow money to pay the judgment but, due to their limited income, they had been unable to get a loan. She admitted that when she signed the bankruptcy paperwork, she was not confident in what she was doing and had expressed concerns to her lawyer but she went forward with the filing anyway. She stated that she actually signed her bankruptcy petition on May 24, 2013, and

expected it to be filed that day. The Debtor further stated that the personal check tendered by her husband to "Bruce Pedigo 'Liar'" had since been replaced with a cashier's check — without the pejorative reference — payable to Mr. Pedigo and Joe's Towing. The funds for the payment came from the sale of a vehicle owned by her husband.

The only other witness called at the evidentiary hearing was Rory K. McGinty, the attorney representing Mr. Pedigo and Joe's Towing in the state court matters. Attorney McGinty testified that at the citation hearing scheduled for May 28th in state court, the matter proceeded only as to Kira LLC after the Debtor reported she had personally filed bankruptcy. During the citation hearing as to Kira LLC, the Debtor admitted that she had transferred all of the company's assets to former employees for a "smile." She also stated that she had prepared the company's tax returns during the years it was in operation. Copies of the tax returns subsequently obtained show that a tax preparer was used by the Debtor and Kira LLC.

Attorney McGinty testified that he had received a request from the Trustee for copies of bank statements and other documents he had obtained through discovery in the state court matter. Although he was willing to cooperate with the Trustee, he could not immediately comply with the request because the documents were subject to a state court protective order. Accordingly, Attorney McGinty filed in the state court case what he thought would be a routine motion to amend the protective order to allow him to produce the documents for use in this case. The Debtor, however, filed a written objection and appeared at the hearing personally to ask the state court to prohibit Mr. McGinty from cooperating with the Trustee. The state court overruled the Debtor's objection and amended the protective order to allow production of the documents by Mr. McGinty and his clients to the Trustee.

Finally, Mr. McGinty testified about a series of state court lawsuits filed by Sean Youngblood against Mr. Pedigo and Joe's Towing and an ongoing suit filed by Joe's Towing against Sean Youngblood, Kira LLC, and others. He admitted that the Debtor, in her individual capacity, was not a party to any of those cases.

The parties presented arguments at the conclusion of the evidentiary hearing and had briefed the legal issues before the hearing. All pending motions are ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. The issues to be decided here are core proceedings. *See* 28 U.S.C. §157(b)(2)(A).

## III. Legal Analysis

### A. The Debtor Filed her Petition in Bad Faith

A threshold issue in deciding to dismiss or convert this case is whether the Debtor acted in good faith in filing her petition. Chapter 13 does not contain an express requirement that petitions be filed in good faith, but cases may be dismissed or converted for "cause," and "cause" includes the lack of good faith in filing. *See* 11 U.S.C. §1307(c); *In re Smith*, 848 F.2d 813, 816 n.3 (7th Cir. 1988); *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992). A good faith inquiry is a factual determination based on the totality of circumstances of a particular case. *See Smith*, 848 F.2d at 817-18; *Love*, 957 F.2d at 1355. Generally, a finding of bad faith — or lack of good faith — requires a finding of serious debtor misconduct or abuse. *See Smith*, 848 F.2d at 820-21.

Cases discussing good faith in the Chapter 13 context distinguish between the good faith

requirement to avoid dismissal and the good faith requirement to obtain plan confirmation. *See* 11 U.S.C. §§1307(c), 1325(a)(3). Although a lack of good faith in filing may lead to dismissal or conversion, the consequences of a lack of good faith in proposing a plan may be less severe and lead only to an amended plan being required. *See Love*, 957 F.2d at 1354. Further, a debtor, as the plan proponent, has the burden of proof that a plan is filed in good faith, but the trustee and creditors seeking to have a case dismissed or converted have the burden of establishing a lack of good faith in filing. *Id.* at 1355.

Both objective and subjective inquiries are involved in determining whether a case has been filed in good faith. *Id.* at 1357. Factors to be considered include the nature and potential nondischargeability of scheduled debts; the timing of the case filing; the circumstances of how particular debts were incurred; the debtor's motive for filing; how the debtor's actions affected creditors; the debtor's treatment of creditors before and after filing; and whether the debtor has been forthcoming with the court and creditors. *See In re Sidebottom*, 430 F.3d 893, 899 (7th Cir. 2005); *Love*, 957 F.2d at 1357.

In a totality of circumstances analysis, all of the factors should be considered and none should be given undue weight. Chapter 13 contains different provisions than Chapter 7 for the discharge of debts, and the fact that a debtor selects the more favorable provisions of Chapter 13 is not, in and of itself, determinative of bad faith. *See Smith*, 848 F.2d at 818; 11 U.S.C. §§523(a), 1328. Likewise, while the timing of a case filing may be relevant to the inquiry, it is not necessarily the controlling factor. Although filing immediately after the entry of an unfavorable judgment may be viewed as a sign of bad faith, waiting to file until the eve of a sale or other execution on a judgment may be viewed just as unfavorably. *See Smith*, 848 F.2d at 821.

The Trustee and creditors presented substantial evidence that the Debtor acted in bad faith both before and after she filed this case and, accordingly, that her filing was not in good faith. The Debtor did little to rebut this evidence. There is no dispute that the state court judgment entered in favor of Mr. Pedigo and Joe's Towing was based on a finding that the Debtor made false allegations in her complaint against them. The Debtor admitted that she lied at the citation to discover assets hearing when she said that she prepared the company tax returns. And, she does not dispute that, while she was involved in the state court litigation, she transferred all of the assets of Kira LLC to third parties for no consideration.

The Debtor admits that she did not seriously review the information she provided to her original bankruptcy attorneys and that the documents she initially filed contained numerous inaccuracies. She concedes that she lied on her Amended Schedule I when she represented that her husband was holding $10,000 which could be used for plan payments. She has not rebutted the allegation that her Amended Schedule J does not list all of her household expenses and, therefore, she does not actually have $400 per month available to make plan payments. She provided no credible explanation of why she protested Attorney McGinty's effort to modify the state court protective order so that he could share information with the Trustee.

Instead of challenging the evidence, the Debtor tried to make excuses for her conduct. She claimed that she suffers from memory loss because of the injuries she sustained in 2006. She described the memory loss as a problem of not always being able to remember what she did in the past. But, she did not claim to be incompetent or to have suffered any cognitive impairment which would limit her ability to make judgments or know right from wrong. And, she testified that while her husband was running BN Towing, she was going to college and receiving good grades. The

Debtor's memory issue may be real, but the problem does not justify her failure to provide accurate information on the documents filed in this case. The Debtor's memory problem did not cause her to misrepresent that she had $10,000 available on her Amended Schedule I or that she had listed all of her monthly expenses on her Amended Schedule J. Her memory problems did not cause her to fight Attorney McGinty's efforts to cooperate with the Trustee.

The Debtor also places blame on her original attorneys. Those attorneys have been repeatedly criticized by this Court for their lax standards in collecting complete information and filing accurate documents. *See, e.g.*, *In re Brennan*, 2013 WL 4046447 (Bankr. C.D. Ill. Aug. 8, 2013); *In re Moffett*, 2012 WL 693362 (Bankr. C.D. Ill. Mar. 2, 2012). But, the Debtor does not claim that she provided the attorneys with correct information which they mishandled. To the contrary, she admits that she paid almost no attention to the information that her husband provided to the attorneys, and she signed the final documents despite not fully understanding what she was doing. To be sure, more conscientious attorneys would have required more information about the underlying issues which caused the Debtor to need relief and would never have filed the case proposing a plan payment of $522 per month for someone already $1412 short each month. But, the Debtor went along with her attorneys because she wanted to stop the collection efforts of Mr. Pedigo and Joe's Towing. And, even when she switched to a new attorney, she continued to lie about her budget and the $10,000 she claimed was on hand. No doubt, the Debtor received poor legal advice, but she remains responsible for her own conduct.

All of the factors compel a finding that the Debtor acted in bad faith when she filed this case. Her principal debt arose from misconduct in the state court, and she made every effort to avoid paying the sanctions judgment. She transferred all of the assets of Kira LLC without consideration,

and she lied at the citation to discover assets hearing. When she ran out of state court options, she filed this case but made no effort to be forthright in the documents she filed. She lied about the funds available to make plan payments, and she fought the efforts of Attorney McGinty to provide information to the Trustee. The Debtor filed this case in bad faith, continued to act in bad faith after filing, and must be sanctioned accordingly.

### B. Dismissal with a Bar to Refiling is the Proper Sanction for the Debtor's Conduct

The Debtor claims that regardless of her conduct, she has an absolute right to dismiss her case. Section 1307(b) says that "[o]n the request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter." 11 U.S.C. §1307(b). And, there is some case law support for the proposition that no matter how a debtor has acted or whether a trustee has already filed a motion to convert, a Chapter 13 debtor retains an absolute right to dismiss. *See In re Williams*, 435 B.R. 552, 560 (Bankr. N.D. Ill. 2010). But, the issue is not quite so simple or straightforward as the Debtor argues.

The Supreme Court, in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), held that a debtor's unqualified right to convert from Chapter 7 to Chapter 13 as provided in §706(a) is subject to an exception for bad faith. The Court found that conversion is limited to chapters for which a debtor is eligible, and that conducting oneself in good faith, or at least not in bad faith, is a condition of eligibility for Chapter 13. *Id.* at 374-75. Thus, a debtor who has acted in bad faith in a Chapter 7 case is not eligible for Chapter 13 and can be denied a right to convert to Chapter 13 notwithstanding the apparent absolute language of §706(a). *Id.*; 11 U.S.C. §706(a).

A split of authority has developed regarding the reach of the *Marrama* holding. Some courts

have construed *Marrama* narrowly, finding that it relied on the specific requirement of eligibility found in §706(d) and, therefore, does not limit a debtor's rights under §1307(c). *See, e.g.*, *Williams*, 435 B.R. at 557-58; *In re Winder*, 2011 WL 2620992, at *2 (Bankr. N.D. Ala. July 1, 2012); *see also* 11 U.S.C. §706(d). Other courts find no analytical distinction between the good faith requirements for conversion and for dismissal and have found that, when a Chapter 13 debtor has acted in bad faith and filed for dismissal in the face of a motion to convert or for sanctions, the debtor does not have an absolute right to dismiss. *See, e.g.*, *Jacobsen v. Mosser (In re Jacobsen)*, 609 F.3d 647, 660 (5th Cir. 2010); *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 773-74 (9th Cir. 2008); *In re Kotche*, 457 B.R. 434, 439-40 (Bankr. D.Md. 2011).

       The Seventh Circuit has not decided whether *Marrama* limits a Chapter 13 debtor's right to dismiss. And because this Court intends to dismiss rather than convert the case, a full-scale analysis of the issue is not required here. Suffice it to say that this Court finds the reasoning of *Jacobsen* and *Rosson* persuasive. If good faith is a condition of eligibility to be a Chapter 13 debtor — and *Marrama* says that it is — then a debtor who has acted in bad faith, both before filing and with respect to the actual filing, is not eligible to be a Chapter 13 debtor. And, a debtor who is not eligible to be a Chapter 13 debtor is not entitled to the protections of Chapter 13 such as the absolute right to dismiss. The Debtor here forfeited her eligibility for Chapter 13 by her conduct in state court and by her lack of honesty in her filings here. Accordingly, she also forfeited her absolute right to dismiss this case.

       Even though the Debtor does not have an absolute right to dismiss, this case still will be dismissed. Practical considerations compel dismissal. The Debtor has only a few creditors who must be paid. Because of the small amount of funds a Chapter 7 trustee would have to recover to pay those

creditors in full, it is highly unlikely that the investigation the Chapter 13 Trustee argues is needed would actually occur in a converted case.

The Debtor scheduled approximately $25,800 in unsecured debt and no secured or priority debt. She listed the sanction judgment owed to Mr. Pedigo and Joe's Towing at $13,500. A cashier's check for $13,277 has been tendered to those creditors and, although their attorney claims that a few dollars of interest remain to be paid, the sanction judgment is substantially paid. Thus, the Debtor has only about $12,300 in unsecured debt left to be paid. The Chapter 13 claims bar date does not run for a couple of weeks, but at this time, only two claims totaling about $2300 have been filed.

In a converted case, if every scheduled creditor filed a claim, after adding trustee fees, the total needed to pay all claims in full would be in the $15,000 range. The Debtor has an unencumbered vehicle she claims is worth $22,000 and she values her unencumbered house at $285,000. The attorney for Mr. Pedigo and Joe's Towing questioned her about other vehicles owned by her husband but presumably paid for by her, including a Harley Davidson motorcycle and a Dodge truck. The Debtor did not dispute the existence of those vehicles. The Debtor and her husband sold a vehicle to pay Mr. Pedigo and Joe's Towing. It is likely that they could sell another vehicle or two to provide a Chapter 7 trustee with the funds to pay creditors in full.

If the Chapter 7 trustee were tendered sufficient funds to pay all claims in full, that trustee would have neither the incentive nor the authority to continue to recover assets or pursue transfers. A Chapter 7 trustee cannot pursue collections simply to create a surplus estate. *See In re Friedrich*, 2006 WL 2699209, at *1 (Bankr. C.D. Ill. Aug. 31, 2006). And, because the Chapter 7 trustee receives no compensation for the value of assets returned to a debtor in a surplus case, it is unlikely that such a trustee would spend much time pursuing assets once sufficient funds to pay claims were

-14-

in hand. *See* 11 U.S.C. §326(a).

Legal impediments also exist which limit a Chapter 7 trustee's ability to complete the investigation and asset recovery contemplated by the Chapter 13 Trustee. Kira LLC is a dissolved limited liability company, and the Trustee suggests that all assets and liabilities of Kira LLC are now the personal assets and liabilities of the Debtor. But Illinois law provides that even after dissolution, a limited liability company continues for the purpose of winding up its affairs. *See* 805 ILCS 180/35-3(a). And, that winding up requires that the company's assets be applied first in payment of the company's debts before members receive the net amounts remaining as distributions for their interests. *See* 805 ILCS 180/35-10. Accordingly, although a Chapter 7 trustee could take control of the Debtor's membership interest in Kira LLC, the trustee would not automatically have a right to the possession and control of the company's assets. Analogous case law dealing with similar issues in the corporate context makes clear that the property of a legal entity in which a debtor has an interest but which is separate and distinct from the debtor does not automatically become property of a debtor's estate. *See, e.g.*, *Fowler v. Shadel*, 400 F.3d 1016, 1018 (7th Cir. 2005); *In re Billingsley*, 338 B.R. 372, 375 (Bankr. C.D. Ill. 2006).

The only known creditors of Kira LLC are Mr. Pedigo and Joe's Towing. Their attorney, Mr. McGinty, testified about ongoing contentious state court litigation which those creditors have pending against Kira LLC and Sean Youngblood but not the Debtor. There would be no practical reason or financial incentive for a Chapter 7 trustee to get involved in that litigation in order to wind up the affairs of Kira LLC and produce a surplus estate for distribution to the Debtor. The issues related to the fraudulent transfer of the assets of Kira LLC are best left to parties such as Mr. Pedigo and Joe's Towing who have a direct interest in recovering those assets.

This case should never have been filed. The Debtor established that she and her husband had assets which could easily and quickly be liquidated to pay the sanction judgment. They have assets available to pay her other creditors. The Debtor should not continue to have the protection of the automatic stay. Her case must be dismissed.

When a case has been filed in bad faith, a bar to refiling may be an appropriate sanction. *See Winder*, 2011 WL 2620992, at *2 (Bankr. N.D. Ala. July 1, 2011); *In re Uzaldin*, 2012 WL 6681815, at *4 (Bankr. E.D. Va. Dec. 21, 2012). At a preliminary hearing on the pending motions, the attorney for the Debtor acknowledged that even if the Debtor has an absolute right to dismiss, a bar to refiling may be imposed. Further, the Debtor, through her attorney, admitted that a bar to refiling here would be appropriate. Accordingly, the dismissal will be with a three-year bar to refiling. This significant amount of time is necessary to impress upon the Debtor the seriousness of her misconduct and to give her creditors time to fully litigate and collect what is owed to them through state court proceedings.

No further sanctions will be imposed. Mr. Pedigo and Joe's Towing requested an award of fees, but most of the evidence presented on the issue related to the wrongful conduct of Sean Youngblood rather than the Debtor. Further, there is ongoing litigation in state court where sanction motions are pending and the issues can be fully heard and resolved.

### IV. Conclusion

The Debtor's conduct both before and at the time of filing of this case was wrongful and in bad faith. Because of her conduct, she forfeited her absolute right to dismissal. Nevertheless, this case will be dismissed. Debtor's creditors are best served by having the unfettered right to prosecute

their claims against her in state court. Debtor will be barred from refiling any bankruptcy case for a period of three years as a sanction for her conduct and to make sure that her creditors are able to collect their debts from her without the interruption of another bankruptcy case.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###